HIGH CAPACITY PRODUCTS *v*. Gwendel L. MOORE

CA 97-880 962 S.W.2d 831

Court of Appeals of Arkansas
Division III
Opinion delivered February 25, 1998

*Shackleford, Phillips, Wineland & Ratcliff, P.A.*, for appellant.

*Denver L. Thornton*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant High Capacity Products appeals the Workers' Compensation Commission's award of benefits to appellee Gwendel Moore for a rapid repetitive injury she received while working for appellant's electrical meter-box manufacturing company. Appellant asserts there is no substantial evidence to support the Commission's findings. We disagree and affirm.

Moore, a thirty-eight-year-old woman, worked for appellant for approximately five years. She used an air gun to assemble blocks with a quota goal of one thousand units per day. She was

required to assemble each block by using an air-powered appliance to attach two nuts to each block. She would hold the parts of the unit with her left hand and work the air gun with her right hand. She averaged using the air gun to attach a nut every fifteen seconds, according to the testimony of her supervisor. The majority of her time was consumed in this quota assembly. Her job required three maneuvers to be repeated in succession all day: assembling the separate parts, using the air-compressed equipment to attach the parts together with nuts, and throwing the units into a box.

She testified she had experienced two prior injuries due to her employment with appellant and that it had accepted and paid for both instances. The injuries were strains in the same location. Neither past injury had left her debilitated to the point that she was unable to return to work at full capacity. With the more recent of those injuries, she saw the company doctor and her own doctor in August 1994 for left shoulder and neck pain. She received treatment for a cervical strain and was released to return to work. She admittedly experienced pain in her shoulder and neck between August 1994 and March 7, 1995. It was only the last incident, the one at issue before us, that appellant declined to accept.

On March 7, 1995, early on in her shift she reported neck and shoulder pain to her immediate supervisor. Her testimony reflected that she had experienced no other trauma or accident to her shoulder and neck other than the prior injury sustained at work for this employer. She testified that the routine of "just constantly working and lifting and pulling on the [air gun] machine and holding the parts" caused her shoulder and neck pain to recur to such a degree that she finally reported it on that day, March 7, 1995.

The immediate supervisor corroborated this testimony, recalling not a specific incident of injury, but only that Moore reported hurting in her left shoulder and neck. That supervisor told her to report this to the woman in higher command. That person told Moore to go to her family physician, not the company doctor.

Moore did see her physician, Dr. Pinkerton, on March 10th, and he diagnosed a cervical strain. He began conservative treatment of her injury, including physical therapy, and ordered an MRI for evaluation of her cervical problem. The MRI revealed spondylosis, a degenerative condition related to use and age, but no significant cervical findings for purposes of her complaints. He took her off work on April 7, 1995.

On April 20, 1995, she was referred to a neurosurgeon, whose examination revealed a two-thirds capacity in the range of motion of her neck. His opinion was that she suffered a cervical strain, and he too recommended physical therapy. By June 1995, she had seen an orthopedic surgeon. His evaluation was that she had a cervical muscular/ligamentous injury that could take weeks or months to resolve. Another physician evaluated her for potential trigger point injections for relief. When seen by Dr. Jacob Abraham at The Pain Clinic, he diagnosed chronic myofascial cervical pain. She continued to see Dr. Abraham off and on until September 6, 1995, when he no longer had any services to offer her.

To prove a rapid repetitive motion injury, Moore had the burden of proving by a preponderance of the evidence that the injury:

(1) arose out of and in the course of her employment;
(2) caused internal or external physical harm to the body requiring medical services;
(3) was caused by rapid repetitive motion;
(4) was the major cause of the disability or need for treatment.

See Ark. Code Ann. § 11-9-102(5) (Supp. 1997); see also Lay v. United Parcel Serv., 58 Ark. App. 35, 944 S.W.2d 867 (1997). The injury must also be established by medical evidence, supported by objective findings. Ark. Code Ann. § 11-9-102(5)(D) (Supp. 1997). Objective findings are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16) (Supp. 1997).

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the

Commission's findings and affirm if the decision is supported by substantial evidence. *White v. Frolic Footwear*, 59 Ark. App. 12, 952 S.W.2d 190 (1997). Substantial evidence is that evidence a reasonable mind might accept as adequate to support a conclusion. *Mikel v. Engineering Specialty Plastics*, 56 Ark. App. 126, 938 S.W.2d 876 (1997). A decision of the Commission is reversed only if we are convinced fair-minded persons using the same facts could not reach the conclusion reached by the Commission. *Id.* In our review, we recognize that this court defers to the Commission in determining the weight of the evidence and the credibility of the witnesses. *Id.* The issue is not whether we may have reached a different conclusion or whether the evidence might have supported a contrary finding. *Harvest Foods v. Washam*, 52 Ark. App. 72, 914 S.W.2d 776 (1996). Furthermore, on appeal to this court, we review the decision of the Commission and not that of the administrative law judge. *Thornton v. Bruce*, 33 Ark. App. 31, 800 S.W.2d 723 (1990). In this case the ALJ denied benefits and the Commission reversed that decision. We have applied this standard of review and find there to be substantial evidence to support the Commission's findings.

 Given the fact that Moore testified that she suffered no other injury or trauma to her left shoulder and neck, other than the earlier compensated injuries to the same location while in the same job, the Commission had substantial evidence to find she sustained a compensable injury arising out of and in the course of her employment for appellant. Objective measurable findings included the documented moderate spasms with "large palpable triggers" on at least two doctor visits in August 1995. This court and the Commission have accepted muscle spasms as objective findings. *University of Arkansas for Med. Sciences v. Hart*, 60 Ark. App. 13, 958 S.W.2d 546 (1997); *see also Daniel v. Firestone Bldg. Prods.*, 57 Ark. App. 123, 942 S.W.2d 277 (1997). "Spasm" is defined in *Stedman's Medical Dictionary* 1304 (23d ed. 1976) as: "(1) An involuntary muscular contraction . . . . (2) Increased muscular tension and shortness which cannot be released voluntarily and which prevent lengthening of the muscles involved; [spasm] is due to pain stimuli to the lower motor neuron." This constitutes an objective finding pursuant to § 11-9-102(16) for

purposes of this injury. *See University of Arkansas for Med. Sciences, supra.*

### Rapid Repetitive Motion

This court has had the opportunity in recent cases, not available to the Commission at the time it rendered its opinion, to develop somewhat that area of the workers' compensation law concerning what constitutes rapid repetitive motion. We think the Commission correctly applied the statutory requirement and that there is substantial evidence to support the Commission's finding that Moore's injury was caused by rapid repetitive motion. None of the cases mirror the situation and circumstances of appellee herein. Nonetheless, we believe that this is the most compelling case demonstrating rapid repetitive motion presented to this court to date. We have stated that a claimant need not prove exact or almost exactly the same movement again and again to show "rapid repetitive motion." *Baysinger v. Air Sys., Inc.*, 55 Ark. App. 174, 934 S.W.2d 230 (1996). Multiple job tasks, when considered together, could satisfy the statutory requirements. *Id.* There was testimony presented that her assembly duties required her to ensure one nut to be in place on an average of every fifteen seconds during the majority of her shift. We find this to be substantial evidence to support the Commission's award of benefits.

### Major Cause

"Major cause" means more than 50% of the cause of the disability or need for treatment and it is established by a preponderance of the evidence presented to the Commission. Ark. Code Ann. § 11-9-102(14)(A) (Repl. 1996). Appellant asserts that an expert, meaning a physician, must state what the major cause was. However, the legislature did not so limit the acceptable evidence that could be considered.

The Commission determined that Moore was a credible witness and believed that she had suffered no other injury to her left shoulder or neck other than due to her activities in her work for appellant. She consistently told medical providers of past injury to the same location. Appellant makes much of the fact

that her chiropractor, treating her for a subsequent automobile accident in November 1995, was unaware of her prior left shoulder and neck injury. This is irrelevant to her claim for benefits, though, since her benefits expired in September 1995.

The Commission observed that there was no evidence brought out to contradict the testimony that she suffered no other injury. Contrary to appellant, we do not believe that this observation shows an improper shifting of the burden of proof, though perhaps inartfully stated by the Commission in its opinion. The preponderance of the evidence indicated that the sole cause, therefore certainly the major cause of the disability or need for treatment, was the injury that resulted from her work activity. We cannot say the Commission erred in this respect for there is substantial evidence to support its finding.

*Temporary Total Disability*

■ Moore was awarded temporary total disability benefits from April 7, 1995, until September 6, 1995, when her healing period ended. When an injured employee is totally incapacitated from earning wages and remains in her healing period, she is entitled to temporary total disability benefits. *Arkansas State Highway & Transp. Dep't. v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1991). The healing period ends when the employee is as far restored as the permanent character of the injury will permit. *Carroll Gen. Hosp. v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996). The determination of when the healing period has ended is a factual one and will be upheld on appeal if there is substantial evidence to support it. *Id.* After undergoing months of physical therapy, medication, and injection treatments, no physician had any additional treatment to offer her after September 6, 1995. The Commission had evidence that the doctor who stated it could take weeks or months to recover from this cervical strain injury, orthopedist Dr. Giller, wrote this in a letter to her treating physician, Dr. Pinkerton, who had referred her to him.

■ She remained off work while she sought these medical treatments, so there was no need for any of the subsequent treating physicians to opine that she should be off work. Though there

was one small "RTW: 5-18-95" notation on a visit to Dr. Pinkerton, he subsequently continued to see Moore and treat her. Moore testified that she had never been released to return to work. We cannot say that Moore was not temporarily and totally disabled from the last day she worked in April 1995 until September 6, 1995, when no further treatment could help her.

Affirmed.

CRABTREE, J., agrees.

ROGERS, J., concurs.

JUDITH ROGERS, Judge, concurring. I concur in the affirmance of this case because I believe it is the province of the Commission, under the law, to decide if the appellee's injury was a gradual onset injury and the major cause of her current disability and need for treatment. However, I am disturbed by a few aspects of the Commission's opinion.

First, I am bothered by the dearth of findings of the ALJ and the Commission. But in reading the Commission's opinion, it appears to me that it is implicit in the decision that appellee's need for treatment was compensable. I am also concerned by the fact that the Commission did not state with more certainty appellee's recurrence of shoulder pain that had twice before been treated as compensable by the company and was caused by the motions of pulling and lifting the air gun.

In addition, I find the Commission's reliance on the lack of evidence that appellee had no other trauma or accident troubling. It appears that the Commission shifted the burden of proving a compensable injury from the claimant to the employer. However, the Commission found appellee's testimony credible and concluded that she sustained a gradual onset injury which was caused or aggravated by the physical tasks required in her job. I certainly cannot say that there is no substantial evidence to support the Commission's decision.