Renate HAPNEY *v.* RHEEM MANUFACTURING
COMPANY

99-732                                    26 S.W.3d 777

Supreme Court of Arkansas
Opinion delivered September 14, 2000
[Petition for rehearing granted in part
and denied in part September 14, 2000.* ]

* *Reporter's note:* For the original opinion, *see Hapney v. Rheem Mfg. Co.*, 341 Ark. 548,
26 S.W.3d 771 (2000).

14

*Walker, Shock, Harp, & Hill, PLLC*, by: *Eddie H. Walker*, Jr., for appellant.

*Warner, Smith, & Harris*, PLC, by: *Wayne Harris*, for appellee.

TOM GLAZE, Justice. Appellee Rheem Manufacturing Company petitions for rehearing of this court's June 8, 2000, decision wherein it held that the gradual onset for back injuries specified in Ark. Code Ann. § 11-9-102(4)(A)(ii)(b)[1] applies to injuries to the neck or cervical spine.

In reaching its decision, the majority court relied in relevant part on the case of *Newberg v. Thomas Industries*, 852 S.W.2d 339 (Ky. App. 1993). There, the Kentucky Court of Appeals, citing to the *American Medical Association's Guides to the Evaluation of Permanent Impairment* (1st ed. 1977), held that the cervical vertebrae are part of the worker's back. In so holding, the Kentucky court based its decision on the 1977 *Guides* which provided, "The back is a unit of the whole man, [and] may be divided into three sections: the cervical, dorsal, and lumbar regions."

Rheem notes that the *Newberg* case was first mentioned by appellant Renate Hapney during oral argument, and it was unable to respond as it should.[2] Even Hapney's counsel was unable to answer the questions posed to him as to whether the 1977 *Guides'* definition of "back" relied on by the *Newberg* court had changed in subsequent editions of the *Guides*. Rheem now accurately submits

---

[1] At the time Hapney filed her appeal, prior to the issuance of the 1999 supplement to the Arkansas Code, this section was § 11-9-102(5). *See* Ark. Code Ann. § 11-9-102 (Repl. 1996).

[2] This belated reference to the *Newberg* case is alone sufficient to consider the granting of a rehearing, especially when this court's original decision relied on the *Newberg* holding.

that the *American Medical Association's Guides to the Evaluation of Permanent Impairment*, 2nd, 3rd, and 4th editions, do not contain the definition of "back" utilized by the court in *Newberg*. In fact, the *Guides*, 4th edition, at page 13, in discussing the musculoskeletal system, describes that system as being comprised of the upper extremity, the lower extremity, the spine, and the pelvis, each to be considered a unit of the whole person. While the term "spine" is used, "neck" or "back" is not. Moreover, a discussion of the spine in the fourth edition, at page 94, states that symptoms related to the back *and* spine are among the most common of adults' everyday complaints, thus demonstrating that the two are not the same thing. The *Guides*, 4th edition, at pages 116-17, further recognizes the "neck" as a distinct unit in connection with measuring range of motion.

■ The major point to be made of the above is that the *Newberg* decision simply is not controlling here since its employment of the definition of "back" used in the 1977 *Guides* is no longer recognized. Instead, the more current *Guides* appear to omit that definition of "back" used in the 1977 edition and correctly employ the term "spine" when dealing with the determination of impairments. It is also worth noting at this point that the *Guides'* purpose is just that — aiding physicians in the determination of impairments, not in determining whether an injury is compensable.

■ In considering the above, we emphasize the obvious which was noted in the dissenting opinion rendered on June 8. Section 11-9-102(4)(A)(ii)(b) provides that a worker sustains a compensable gradual onset injury if the injury is a *back* injury; the statute makes no mention of "spine" or "neck." Also, as mentioned in that opinion, recognized medical definitions have very clearly defined the term "back" as being below the neck or from the neck to the pelvis.[3] For these reasons, we grant Rheem's

---

[3] This court's original majority opinion referenced *Websters' New World Dictionary* 99 (3rd college ed. 1988) to define back as (1) the part of the body opposite to the front; in humans and many other animals, the part to the rear or top reaching from the nape [back] of the neck to the end of the spine; (2) the backbone or spine. This language offers little clarification, but we note the definition in *Webster's New Universal Unabridged Dictionary*, Deluxe 2nd Edition, cited by Rheem, which defines "back" as follows:

(1) the part of the body opposite to the front;

(2) in man and many animals, the part to the rear or top, opposite the chest, breast, or belly, and reaching from the base of the neck to the end of the spine. (Emphasis added.)

request for rehearing, and hold the commission was correct in rejecting Hapney's argument that she sustained a compensable back injury under § 11-9-102(4)(A)(ii)(b).

■ Having rejected Hapney's foregoing first point on appeal, we must now consider her two other points for reversal, which our court did not address in its original opinion. In her second point, Hapney submits that her neck injury is compensable because the injury was caused by a specific incident and was identifiable by time and place of occurrence pursuant to Ark. Code Ann. § 11-9-102(4)(A)(i). This argument is meritless and can easily be dismissed. Section 11-9-102(4)(A)(i) defines a compensable injury as one "caused by a specific incident and . . . identifiable by time and place of occurrence." Hapney's own deposition testimony reflected that she did not know how she was injured and that she did not recall anything specific happening, nor did Hapney tell her treating physician that her pain was associated with any particular, specific incident. Thus, her own words belie her argument that the injury was caused by a specific, identifiable incident.

■ Her next or third point poses a more complex question. Under this argument, Hapney urges that her injury is compensable because it was caused by rapid repetitive motion, as provided under Ark. Code Ann. § 11-9-102(4)(A)(ii)(a) (Supp. 1999).[4] To prove a rapid repetitive motion injury, a claimant must prove by a preponderance of the evidence that the injury: (1) arose out of and in the course of her employment; (2) caused internal or external physical harm to the body requiring medical services; (3) was caused by rapid repetitive motion; and (4) was the major cause of the disability or need for treatment. *High Capacity Prods. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998).

In addition, the court of appeals has expanded the definition of "rapid repetitive motion" beyond an earlier definition that required the motions to be "exact, or almost exactly, the same movement again and again." *Baysinger v. Air Systems, Inc.*, 55 Ark. App. 174, 934 S.W.2d 230 (1996) (cited in *Malone v. Texarkana Public Schools*, 333 Ark. 343, 969 S.W.2d 644 (1998)). *Malone* discusses that portion of *Baysinger* which refined that earlier definition "to include

---

[4] This statute expressly provides that carpal tunnel syndrome is a compensable injury falling within the defintion of rapid repetitive motion injury.

multiple tasks involving different movements which could be considered together to satisfy the repetitive element of 'rapid repetitive motion.' " *Malone*, 333 Ark. at 349, 969 S.W.2d at 647.

Thus, in *Malone*, this court devised a two-part standard to determine whether an injury is caused by rapid and repetitive motion: (1) the tasks must be repetitive, and (2) the repetitive motion must be rapid. *Malone*, 333 Ark. at 350, 969 S.W.2d at 647. In *Malone*, we further stated as follows: "As a threshold issue, the tasks must be repetitive, or the rapidity element is not reached. Arguably, even repetitive tasks and rapid work, standing alone, do not satisfy the definition. The repetitive tasks must be completed rapidly." *Id.*, 969 S.W.2d at 647–48. In *Malone*, the court held that a woman who worked as a custodian did not perform rapid repetitive motions, even though her job required numerous movements repeated many times in a day, because the movements were different and separated in time. *Id.*, 969 S.W.2d at 648.

Here, however, the facts are more compelling. Over the course of a nine- to ten-hour shift, Hapney completed 316 units, each of which had six screws; on average, the same movements were repeated every 1.89 minutes. Because she had to bend her neck for each screw, that would be 1,896 bends during the shift, or approximately 189–90 bends per hour, assuming a ten-hour shift (the figure approaches 210 bends per hour given a nine-hour shift). Stated another way, in ten hours, Hapney would have bent her neck a little more than three bends per minute, or one bend every twenty seconds.

The workers' compensation commission rejected this math, concluding that Hapney did not prove that she had sustained a rapid repetitive motion injury because there was "no evidence that each movement required of claimant actually involved the shoulder or neck." We believe the commission has misread the record. Our standard of review requires us to consider whether a reasonable person could come to the same conclusion, and we will not reverse the commission's decision unless we are convinced that fair-minded persons with the same set of facts before them could not have reached the conclusions arrived at by the commission. *Olsten Kimberly Quality Care v. Petty*, 328 Ark. 381, 944 S.W.2d 524 (1997). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary

finding; if reasonable minds could reach the commission's conclusion, we must affirm its decision. *Minnesota Mining & Mfg. v. Baker,* 337 Ark. 94, 989 S.W.2d 151 (1999).

■ In the present case, we hold that reasonable minds could not have arrived at the same conclusion as the commission reached. As noted above, nearly 1900 bends over the course of nine or ten hours comes out to a figure between 190 and 210 bends per hour. Even the commission pointed out that Hapney worked on an average of 31.6 units per hour, which required the completion of a set of movements every 1.89 minutes (or a movement every twenty seconds). Movements repeated every fifteen seconds have been found to be sufficiently "rapid" to satisfy § 11-9-102(4)(A)(ii)(a). *High Capacity Prods. v. Moore,* 61 Ark. App. 1, 962 S.W.2d 831 (1998) (affirming commission's decision awarding benefits). Likewise, the court of appeals has held that a series of repetitive motions, performed 115 to 120 times per day separated by periods of only 1.5 minutes, constituted rapid motion within the meaning of the statute. *Boyd v. Dana Corp.,* 62 Ark. App. 78, 966 S.W.2d 946 (1998). Hapney's movements, which were repeated every twenty seconds, met the rapidity requirement.

■ Here, the commission also asserted that "there [was] no evidence that each movement required of claimant actually involved the shoulder or neck." This argument also appeared in Rheem's brief, in which the company asserted that although the sequence of movements was repeated every 1.89 minutes, that " [did] not mean that [Hapney] was required to rapidly move her neck or cervical spine every 1.89 minutes." Both of these arguments, however, ignore Hapney's testimony that she had to "stoop over" to locate the screw hole on each unit, but then "had to bend [her] head or neck" and "bend down and turn [her] neck a little" for each of six screws on each of 316 units. The commission should have considered the positioning of the part of the body as well as the number of movements that the claimant had to undergo to determine if the movement was "rapid and repetitive." *Patterson v. Frito Lay, Inc.,* 66 Ark. App. 159, 992 S.W.2d 130 (1999).

■ ■ While the determination of the credibility of the witnesses and the weight to be given their testimony are matters exclusively within the province of the commission, *see Cooper v. Hiland Dairy,* 69 Ark. App. 200, 11 S.W.3d 5 (2000), it may not

arbitrarily disregard the testimony of any witness. *Freeman v. Con-Agra Frozen Foods*, 70 Ark. App. 306, 19 S.W.3d 43 (2000). Hapney testified that she bent her neck not only for each unit, but for each screw that went into the unit. These same bending movements were repeated for each unit completed, satisfying the repetitive component of the statute. As noted above, these repetitive motions were completed rapidly. The fact that Hapney's injury occurred after her only day on this particular job strongly indicates that her neck was injured as a result of performing these repetitive tasks. Because both parts of the test set out in *Malone* were met, we hold that Hapney satisfactorily proved that she suffered a rapid repetitive motion injury to her cervical spine under § 11-9-102(4)(A)(ii)(a).

We thus hold that Hapney's injury was compensable, and therefore, while we grant Rheem's petition for rehearing concerning our initial June 8, 2000, ruling, we still reverse the commission's denial of benefits to Hapney for the reasons set out above.

CORBIN and THORNTON, JJ., dissent in part and concur in part.

DONALD L. CORBIN, Justice. Although I agree with the majority's ultimate decision to award Mrs. Hapney benefits, I would deny rehearing in this case based simply on the fact that Appellee Rheem Manufacturing Company has presented this court with a petition that does nothing more than reargue its points on appeal. This court's own rule regarding petitions for rehearing specifically states that the petition is to be used to call attention to specific errors of law and fact contained in the opinion. *See* Ark. Sup. Ct. R. 2-3(g). In reversing the previous opinion in this case, the majority does not establish how the opinion contained any error of law or fact; rather, the majority opinion is nothing more than a reflection of a contrary opinion. With this grant of rehearing, this court is setting a new and regrettable precedent.

The majority premises its grant of rehearing on the notion that the previous opinion relied on *Newberg v. Thomas Indus.*, 852 S.W.2d 339 (Ky. App. 1993), a case that is not controlling. First of all, this court's decision did not rely on *Newberg*. It simply pointed out that another jurisdiction had addressed an issue similar to the one before our court. This court has previously reviewed other

jurisdictions' treatments of a particular issue, but it certainly did not establish precedent.

The majority makes bare mention of our previous analysis focusing on the *American Medical Association's Guides to the Evaluation of Permanent Impairment*. As we pointed out, the Commission is required to adopt an impairement-rating guide to be used in the assessment of anatomical impairment, and in complying with its statutory mandate, the Commission adopted the *Guides*. The majority states that the most recent edition of the *Guides* omits the definition of back and instead uses the term spine. We stated as such in our previous opinion, and then went on to explain that if the guide adopted by the Commission categorizes an impairment in terms of the "spine," then the Commission was precluded from making a distinction between the back and the neck for purposes of determining compensability. If the *Guides* does not have the information necessary for a doctor or the Commission to determine what the impairment rating for a neck injury is, only an injury to the spine, then how can this court hold that it is appropriate for the Commission to make a distinction not recognized by the very impairment guide it adopted? The answer is simple, we cannot. Mush ado has been made about the use of the words back and neck in common parlance, but what everyone seems to forget is that the medical evidence in this case established that Mrs. Hapney suffered from *disc herniation at C5-6 and some protrusion at C6-7 resulting in spinal stenosis*. Such injuries are addressed by the *Guides* and the method for determining impairment based on these injuries is explained in detail.

The majority states that the purpose of the *Guides* is to aid physicians in determining impairment, not in determining if an injury is compensable. Even if that is the only purposes of the *Guides*, the majority fails to recognize two important facts. First, the Commission adopted the *Guides* pursuant to statutory mandate. Second, if the purpose of the *Guides* is to aid doctors, and it discusses injuries usch as Mrs. Hapney's in terms of "spinal injuries", as opposed to "neck injuries", the doctors who rely on the *Guides* will in turn rate impairments and diagnose patients in terms of spinal injuries, instead of back or neck injuries. Does that mean that a claimant who is diagnosed with an injury to the L1-L5 region of the spine may not recover under Ark. Code Ann. § 11-9-102(4)(A)(ii)(b) because the doctor did not diagnose the claimant

with a "back injury"? Such as result is highly doubtful. Moreover, in light of the rigid standard applicable to a doctor's opinion in these types of cases, the fact that the *Guides* is relied on by doctors in determining impairment is of utmost importance. Determining impairment and proving compensability are two different things, but they are certainly intertwined. Accordingly, the distinction made by the Commission and now accepted by this court is without merit.

Finally, the majority states that recognized medical definitions have clearly defined the "back" as "being below the neck or from the neck to the pelvis." It is interesting that the majority's chosen definition is self-contradictory. Contrary to how the majority may interpret the definition, those authorities defining the back in a manner that means "from the neck" clearly mean that the neck is the beginning point for the back. The word "from" is consistently defined as: "used as a function word to indicate a starting point." *See Webster's Third New International Dictionary* 913 (1981); *Black's Law Dictionary* 668 (6th ed. 1990). Thus, when the back is defined as being from the neck, such a definition clearly means that the starting point for the back is the neck.

The Commission's determination that this injury was not compensable because it was a "neck injury" as opposed to "back injury" is simply another example of how the Commission denies compensable claims that are obviously compensable on some absurd technical ground. Unfortunately, this court, under the guise of strict construction, is allowing the Commission to prevail, even though it is clearly wrong.

I respectfully dissent.

THORNTON, J., Joins.