Linda Boss FOSTER *v.* EXPRESS PERSONNEL SERVICES
and American Home Assurance Company

CA 05-602                                                  222 S.W.3d 218

Court of Appeals of Arkansas
Opinion delivered January 4, 2006

*Harrelson, Moore & Giles, L.L.P.*, by: *Greg Giles*, for appellant.

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Carol Lockard Worley* and *Jarrod S. Parrish*, for appellees.

WENDELL L. GRIFFEN, Judge. Linda Boss Foster appeals from the denial of workers' compensation benefits. She argues that the Workers' Compensation Commission erred in finding that she was not performing employment services when she was injured. Because Foster was injured in an area in which employment services were expected of her and was furthering her employer's interests when she was injured, we reverse and remand for further proceedings.

Foster was employed by appellee Express Personnel Services and was assigned to work as a temporary employee in accounts receivable for McClarty Auto Mall. Her job required her daily to process, among other things, credit-card slips and e-checks retrieved from Shirley Munden, a McClarty employee who worked at the cashier's desk. Foster was also required at times to pick up warranty slips from the warranty clerk and to confer with the

service manager. While Foster typically reported to work at 8:00 a.m., when she reported earlier, she so indicated on her time slip and was compensated for that time.

Foster's office was on the second floor of McClarty's used-car building. The service manager's office and warranty clerk's office are located in the service building. Between the used-car building and the service building is the service-bay area, into which customers bring their vehicles to be serviced. Foster and other employees parked in the employee parking lot, which was behind the service building, and entered the building through the service bay. Foster's normal routine was to go past the time clock in the service-bay area (she was not required to clock in), turn left into the used-car building, bypass the stairs that lead to the second floor, and go directly to the cashier's desk on the first floor to pick up credit-card receipts before going to her own desk. However, there were times when other McClarty employees questioned Foster in the service-bay area before she reached the cashier's desk.

The Administrative Law Judge (ALJ) found that Foster's injury occurred as follows:

> On June 6, 2003, the weather was stormy and [it was] raining hard when the claimant arrived at work. In accord with her normal routine, she entered the facility in the service bay area. At some point after she entered the service bay area and was [en] route to the cashier's desk to pick up her credit cards and e-checks, she slipped and fell backwards. Her hips hit the concrete floor and her head hit one of the parked cars.

The ALJ further found that Foster was on McClarty's premises when she was injured. He noted that Foster's job was principally performed at her desk, but noted that she was also required to perform some job duties away from her desk, including picking up documents from the cashier's desk each morning and picking up warranty slips from the warranty clerk. The ALJ further noted Foster's testimony that she was subject to be called upon to perform employment duties at any time she was on McClarty's premises.

Nonetheless, he concluded that Foster was not performing employment services at the time of her injury because she was not in the area where she was required to perform her employment duties in that: 1) she was in the service-bay area and there was no evidence that her employer required her to be in that area as part

of her employment duties; 2) she was "not yet engaged in any activity required by McClarty or the respondent employer when she fell." The ALJ noted that Foster reported that the injury occurred at 7:50 a.m., ten minutes before she was required to report to work, and that there was no evidence that anyone had questioned her while she was in the service-bay area on the day she was injured.[1] Accordingly, the ALJ denied benefits. The Commission affirmed and adopted the ALJ's findings in full, and this appeal followed.

Foster argues that because obtaining credit-card slips from the cashier's desk was part of her job and because she was on her way to pick up the credit-card slips when she was injured, she was performing employment services at the time she was injured. For support, she relies primarily on *Caffey v. Sanyo Mfg. Corp.*, 85 Ark. App. 342, 154 S.W.3d 274 (2004), and *Shults v. Pulaski County Special Sch. Dist.*, 63 Ark. App. 171, 976 S.W.2d 399 (1998).

The employer asserts that Foster claims her injury is compensable merely because she was "walking in the general direction of her office." It counters that the "coming-and-going" rule precludes a finding that Foster's injury was compensable because she was merely on her way to her job and had not yet arrived at her work station. *Campbell v. Randal Tyler Ford Mercury, Inc.*, 70 Ark. App. 35, 13 S.W.3d 916 (2000); *Srebaul v. Rose Care*, 69 Ark. App. 142, 10 S.W.3d 112 (2000); *Hightower v. Newark Public Sch. System*, 57 Ark. App. 159, 943 S.W.2d 608 (1997). It further asserts that taking the steps necessary to arrive at work and begin the work day does not constitute employment services. Thus, according to the employer, Foster's work day did not begin until she "picked up the papers from Shirley Munden and began working."

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Whitlach v. Southland Land & Dev.*, 84 Ark. App. 399, 141 S.W.3d 916 (2004). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* When a claim is denied because the claimant has failed to show an

---

[1] The ALJ based this finding on the time of injury stated on Foster's medical records. Foster testified that she submitted no time sheet for the day she was injured because she went to the emergency room.

entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.*

A compensable injury is an accidental injury causing internal or external harm that arises out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(I) (Supp. 2005). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Collins v. Excel Spec. Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002). The test for determining whether an employee was injured while performing employment services is the same as the test for determining whether an injury occurred out of and in the course of employment: whether the injury occurred within the time and space boundaries of the employment when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id*; *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). Thus, the critical issue is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Collins, supra.*

█ We reverse the Commission's decision and remand for further proceedings because, regardless of the fact that Foster had not reached her desk or the cashier's desk or was outside of the building in which her office was located, she was unquestionably injured in an area in which employment services were expected of her. In short, workers' compensation law does not require the infinitesimal scrutiny of a claimant's conduct posited by the employer in this case. The real issue is not whether Foster was "on the clock" when she was injured or whether she was on her way to the cashier's desk or her own desk. Rather, the issue is whether the injury occurred within the time and space boundaries of the employment when Foster was carrying out the employer's purpose or advancing its interests directly or indirectly. *Collins, supra.* As Foster argues, the facts of this case are analogous to the facts in *Caffey, supra,* and *Shults, supra,* in which we found that both claimants were performing employment services when injured.

In *Caffey*, the claimant was required to clock in at 7:30 a.m., requiring her to arrive at work in time to exhibit her identification badge to two security guards before clocking in. The *Caffey* claimant complied with these procedures on the day she was injured, but before clocking in, she slipped and fell within 200 feet of her workstation. In *Shults*, the building custodian's first duty was to enter the building and check the alarm system. When he opened the door, he thought that the alarm had been triggered; he fell and injured his leg when he ran to check the alarm.

In the instant case in adopting the ALF's findings, the Commission specifically recognized that Foster's duties sometimes took her away from her desk. Furthermore, the Commission specifically recognized that her duties required her to confer with the warranty clerk. In addition, both Foster and Munden testified that Foster's job required her to confer periodically with the warranty clerk and the service manager, both of whom worked in the service area. Foster testified that she was subject to perform her duties at any time she was on McClarty's premises and that, at times, the warranty clerk or customer-service manager would question her about work-related matters when she arrived at work. Munden also testified that Foster would have been "on the job" for Express as soon as she walked through the bay doors if the service manager needed her for something, because as soon as Foster walked through the doors "they are going to stop her right there. They are not going to wait until she goes to her desk." Janet Landon, co-owner of Express, testified that she had no reason to disagree with the testimony that Foster was required to communicate with employees in the service area.

In fact, according to Foster, the only time that she did not proceed directly to Munden's desk was when she was stopped in the service area. Thus, not only was Foster expected to render employment services *in the area in which she was injured* before she ever reached her desk or the cashier's desk, she was also required to visit that area as needed at other times during the work day. Accordingly, the Commission's finding that Foster was never required to be in the service-bay area as part of her employment duties is factually contrary to the record.

Express would have us hold that no act of Foster was compensable until she reached the cashier's desk, even if she was furthering its interests at the time. However, *Caffey* clearly demonstrates that an employee may be compensated for an injury that occurs even before she reaches her work station or before she is

"on the clock," if she is performing a service that is required by her employer and is directly or indirectly advancing her employer's interests.

Moreover, the facts here are even more compelling to support a finding that Foster was performing employment services than the facts in *Caffey*, because there was no testimony that the *Caffey* claimant would have been required to perform her specific job duties *while en route to her designated job site*. By contrast, it is clear that here, like the *Shults* claimant's, Foster's job duties began once inside the employer's building when she crossed the threshold of service bay area.

That Foster was not actually questioned by the service manager or warranty clerk on the day she was injured is not dispositive. In *Arkansas Methodist Hospital v. Hampton*, 90 Ark. App. 288, 205 S.W.3d. 848 (2005), we found that an injury was compensable where an intensive-care nurse was injured getting breakfast for her fellow nurses even though there was no evidence that she had been asked to assist any other patron while en route to get breakfast. Like the *Hampton* claimant, Foster was expected to advance her employer's interests away from her desk, and was specifically expected to advance her employer's interests in the area where she was injured.

Finally, the "coming-and-going rule" has no application to this case whatsoever. Foster was not driving to work; nor was she injured in McClarty's parking lot while walking to her job. Express cites no cases in which we have used the coming-and-going rule to affirm a finding of noncompensability on facts similar to the instant case.

We hold that fair-minded people could not have reached the Commission's conclusion that Foster was not performing employment services at the time she was injured, and reverse and remand for further proceedings consistent with our opinion.

Reversed and remanded.

ROBBINS and BIRD, JJ., agree.