DEATH & PERMANENT TOTAL DISABILITY TRUST FUND
*v.* LEGACY INSURANCE SERVICES and
Lumbermen's Mutual Casualty

CA 05-732                                    235 S.W.3d 544

Court of Appeals of Arkansas
Opinion delivered May 10, 2006

*Judy Rudd*, for appellant.

*Rieves, Rubens & Mayton,* by: *David C. Jones,* for appellees.

OLLY NEAL, Judge. This appeal from the Arkansas Work-ers' Compensation Commission (Commission) presents the question of whether an insurance carrier is entitled to a credit for payments made toward a twenty-nine percent permanent-ana-tomical-impairment rating against its $75,000 maximum liability for permanent-total-disability benefits pursuant to Ark. Code Ann. § 11-9-502(b) (Repl. 1996). We answer this question in the affirmative; therefore, we affirm the decision of the Commission.

Joseph Thomas worked for appellee Legacy Insurance Ser-vices (Legacy) when he was injured in a motor-vehicle accident on November 14, 2000. He sustained unscheduled closed-head and hand injuries, and Legacy and its carrier, appellee Lumbermen's Mutual Casualty Company, accepted his accident as compensable. In addition to the stipulation of compensability, the parties made several other stipulations, including that (1) Thomas reached maximum-medical improvement and his healing period ended on December 10, 2002; (2) Thomas's permanent- anatomical-impairment rating was being paid, with $38,628 ultimately being the total amount paid over 130.5 weeks; and (3) Thomas was permanently and totally disabled as of December 10, 2002. The only issues presented to the administrative law judge (ALJ) were whether an actuarial valuation study dated June 30, 2003, and offered by appellant Death & Permanent Total Disability Trust Fund, was admissible into evidence and whether appellees were entitled to a credit for the payments made for the impairment rating toward their $75,000 cap for weekly permanent-total-disability benefits. The Commission issued its own opinion in which it affirmed the ALJ's determinations that the actuarial valuation study was inadmissible and that appellees were entitled to a credit. It is from this decision that appellant appeals.

Appellant does not challenge the Commission's determination on the admissibility of the actuarial valuation study; instead, for reversal, appellant asserts only that the Commission erred in its interpretations of Ark. Code Ann. §§ 11-9-501, 502, 519, and 522 as allowing appellees credit for payment of the permanent-anatomical-impairment rating against their maximum $75,000 liability as provided in Ark. Code Ann. § 11-9-502.

In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Wallace v. West Fraser South, Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Foster v. Express Personnel Servs.*, 93 Ark. App. 496, 222 S.W.3d 218 (2006). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Arkansas, Inc.*, 93 Ark. App. 208, 218 S.W.3d 351 (2005).

In affirming the decision of the ALJ, the Commission wrote in part

> The parties in the present matter stipulated that the claimant was permanently and totally disabled. The parties also stipulated that claimant's healing period ended on December 10, 2002. Respondent No. 1 [Legacy Insurance Services and Lumbermen's Mutual Casualty] must therefore pay the claimant "weekly benefits" representing permanent total disability pursuant to Ark. Code Ann. § 11-9-502(b) from the date of the end of claimant's healing period, until the respondent-carrier has paid the claimant $75,000. Benefits paid pursuant to Ark. Code Ann. § 11-9-522(a) are partial benefits and once a determination of permanent and total disability has been made, the benefits due a claimant are no longer governed by 11-9-522 but are found in Ark. Code Ann. § 11-9-502(b) and Ark. Code Ann. § 11-9-519(e). Thus, when a determination of permanent total disability has been made, the benefits paid by a respondent after the end of the healing period are classified as permanent and total disability benefits under Ark. Code Ann. § 11-9-502(b). The statute then provides, "all benefits in excess of seventy-five thousand dollars ($75,000) shall be payable from the Death and Permanent Total Disability Trust Fund."

Based on our *de novo* review of the entire record, . . . [t]he Full Commission affirms the administrative law judge's finding, "Respondent #1 is entitled to a credit for the amount of permanent anatomical impairment rating benefits ultimately paid to Claimant, against the first $75,000 of permanent and total disability benefits Respondent #1 must pay, thereby reducing the balance of the $75,000.00 due from Respondent No. 1."

We hold that substantial evidence supports the Commission's decision. There are two distinct forms of disability payments — temporary and permanent. See Ark. Code Ann. § 11-9-101 (Repl. 1996) ("The primary purposes of the workers' compensation laws are to pay timely temporary and permanent disability benefits to all legitimately injured workers who suffer an injury or disease arising out of and in the course of their employment. . . ."). Temporary disability is that period within the healing period in which an employee suffers a total or partial incapacity to earn wages. *Breakfield v. In & Out, Inc.*, 79 Ark. App. 402, 88 S.W.3d 861 (2002). The healing period is defined as that period for healing of an accidental injury that continues until the employee is as far restored as the permanent character of the injury will permit, and that ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition. See *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). When a claimant's healing period has ended so has his right to temporary disability. See *Legacy Lodge v. McKellar*, 26 Ark. App. 260, 763 S.W.2d 101 (1989). Until the healing period has ended, there is no way to determine whether there is permanent disability. See *Sparks Reg'l Med. Ctr. v. Death & Permanent Total Disability Bank Fund*, 22 Ark. App. 204, 737 S.W.2d 463 (1987) (where claimant's healing period ended on February 7, 1983, any payments made subsequently were for permanent-total disability and only those payments may be applied toward the employer-carrier's maximum–liability limit).

Permanent benefits are only awarded upon a determination that the compensable injury was the major cause of a disability or impairment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(a) (Repl. 1996). Arkansas Code Annotated section 11-9-502 (Repl. 1996) sets forth the exceptions to the limitations on compensability for death and total permanent disability benefits. Subsection b provides:

(b)(1) For injuries occurring on and after March 1, 1981, the first seventy-five thousand dollars ($75,000) of weekly benefits for death

or permanent total disability shall be paid by the employer or its insurance carrier in the manner provided in this chapter.

(2) An employee or dependent of an employee who receives a total of seventy-five thousand dollars ($75,000) in weekly benefits shall be eligible to continue to draw benefits at the rates prescribed in this chapter, but all benefits in excess of seventy-five thousand dollars ($75,000) shall be payable from the Death and Permanent Total Disability Trust Fund.

In this instance, the parties stipulated that Thomas's healing period ended on December 10, 2002. Generally, a stipulation is "[a] voluntary agreement between opposing parties." *Ferguson v. State*, 362 Ark. 547, 556, 210 S.W.3d 53, 58 (2005) (Hannah, J., concurring) (citing *Black's Law Dictionary* 1455 (8th ed. 2004)). It has long been settled law in Arkansas that a stipulation is the equivalent of undisputed proof, and it leaves nothing for the fact-finder to decide regarding the stipulated subject. *Riddell Flying Serv. v. Callahan*, 90 Ark. App. 388, 206 S.W.3d 284 (2005). As such, on December 10, 2002, Thomas became permanently and totally disabled. "Permanent total disability" means "inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment." Ark. Code Ann. § 11-9-519(e)(1) (Repl. 1996).

Furthermore, Arkansas Code Annotated section 11-9-501(c)(2) (Repl. 1996) states that "[a]ny weekly benefit payments made after the commission has terminated temporary total benefits shall be classified as warranted by the facts in the case and as otherwise provided for in this chapter." By accepting the parties' stipulation that Thomas's healing period ended on December 10, 2002, at which time he was permanently and totally disabled, the Commission effectively adopted December 10 as the date that payments for temporary-total-disability benefits ended and permanent disability payments began. Therefore all payments made after December 10, 2002, were classified by the Commission as permanent-total-disability payments that could be applied towards the $75,000 maximum pursuant to Ark. Code Ann. § 11-9-502 (Repl. 1996).

Affirmed.

GLADWIN and GRIFFEN, JJ., agree.