CEDAR CHEMICAL COMPANY, Employer,
Zurich American Insurance Company, Crawford and Company,
Insurance Carrier, TPA, Death & Permanent Total Disability
Trust Fund *v.* Jimmy T. KNIGHT

CA 06-538                                                    258 S.W.3d 394

Court of Appeals of Arkansas
Substituted Opinion on Denial of Rehearing June 6, 2007

*Lawrence W. White*, for appellants.

*Charles P. Allen*, for appellee.

Rᴏʙᴇʀᴛ J. Gʟᴀᴅᴡɪɴ, Judge. This is an appeal from the March 14, 2006 decision of the Arkansas Workers' Compensation Commission (Commission) awarding benefits to appellee Jimmy T. Knight. The employer and insurance carrier appellants contend that no substantial evidence exists to support the Commission's decision that appellee sustained a compensable injury. We affirm the Commission's decision.

## Facts

Knight is a fifty-five year old man who had been employed with appellant for about five years when he sustained his injury on July 1, 2001. Knight worked as a lead operator in Unit Six of the Cedar Chemical Company plant where he was required to perform various job duties involving the formulating and manufacturing of certain chemical products. Throughout his workday, Knight was required to walk up and down three flights of stairs. Knight testified that during the middle of May 2001, he hyperextended his left knee while walking up some stairs at work. He heard a pop in his knee and felt pain that extended up into his back. Knight claims he reported this to his supervisor, but told the supervisor at the end of the day that an accident report was not necessary because he did not feel any more pain. He testified that he did not miss any work because of the incident in May 2001.

On July 1, 2001, Knight began work at 6:30 a.m. and at 11:00 a.m he noticed pain in his left knee as he was walking down some stairs. He testified that he did not know the cause of the knee pain. He continued to work until 2:00 p.m., when he took a lunch break. After lunch, he had great difficulty walking because of the pain in his left knee. Knight sought medical treatment, and x-rays were taken of his left knee on July 2, 2001. The radiologist's opinion of the x-ray was as follows: "Features consistent with gout and/or osteoarthritis with evidence for calcification ligamentous structures with other features as described which may or may not be related to trauma. History is pain."

An MRI taken on July 3, 2001, revealed the following findings: "Probable complete disruption of the anterior cruciate ligament. Probable tear and maceration of the posterior horn of the medial meniscus." On July 5, 2001, Dr. John Wilson wrote, "The MRI revealed a posterior horn tear of the medial meniscus as well as an anterior cruciate tear. Mr. Knight needs an arthroscopy. He is scheduled for this."

On August 1, 2001, Dr. Frederick Azar wrote, "He did have an acute injury recently and I believe this has wakened his arthritis." Subsequently, Knight underwent left knee arthroscopy with Dr. Herbert Hahn on October 17, 2001. After surgery, Knight developed a postoperative sepsis of the left knee with staph aureus, which was treated with two surgical debridements and admission into the hospital from October 25, 2001, until November 19, 2001. Dr. Hahn wrote on October 16, 2002:

> In response to your inquiry dated September 12, 2002, I have reviewed the entire file. The acute injury of the torn medial meniscus that prompted Mr. Knight's surgery on 10-17-01 represents more than 50% of his current problem. It was also this surgery that precipitated the joint infection which is a great part of his current impairment. He will continue to require frequent visits to an orthopedist until such time as he undergoes total knee replacement surgery, and then he will continue to require management after that, all related to recent injury.

On January 7, 2005, a hearing was held before the administrative law judge (ALJ) to determine the compensability of Knight's claim arising out of the July 1, 2001, job injury. The ALJ found that Knight's injury was idiopathic in nature and as a result, Knight failed to prove by a preponderance of the evidence that he

sustained a compensable injury arising out of the course and scope of his employment on July 1, 2001. Knight appealed to the Full Commission, which filed an opinion on March 14, 2006, reversing the ALJ's decision. The Commission held that Knight's injury had resulted from a specific incident arising out of and in the course of his employment with the appellant. This appeal follows.

### Statement of Law

In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Death & Permanent Total Disability Fund v. Legacy Ins. Servs.*, 95 Ark. App. 189, 235 S.W.3d 544 (2006). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Foster v. Express Pers. Servs.*, 93 Ark. App. 496, 222 S.W.3d 218 (2006). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). In making our review, we recognize that it is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Wal-Mart Stores, Inc. v. Stotts*, 74 Ark. App. 428, 49 S.W.3d 667 (2001). When the Commission weighs medical evidence and the evidence is conflicting, its resolution is a question of fact for the Commission. *Green Bay Packaging v. Bartlett*, 67 Ark. App. 332, 999 S.W.2d 695 (1999). The appellate court reviews the decision of the Commission and not that of the ALJ. *High Capacity Prods. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998).

Ark. Code Ann. § 11-9-102(4)(A)(i) defines compensable injury as follows:

> An accidental injury causing internal or external physical harm to the body or accidental injury to prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence.

An idiopathic injury is one whose cause is personal in nature, or peculiar to the individual. *Swaim v. Wal-Mart Assoc., Inc.*, 91 Ark.

App. 120, 208 S.W.3d 837 (2005). Injuries sustained due to an unexplained cause are different from injuries where the cause is idiopathic. *Id.* Where a claimant suffers an unexplained injury at work, it is generally compensable. *Id.* Because an idiopathic injury is not related to employment, it is generally not compensable unless conditions related to the employment contribute to the risk of injury or aggravate the injury. *Id.*

### Specific incident vs. idiopathic condition

Appellants argue that the Commission's finding that Knight's injury resulted from a specific incident as opposed to being an idiopathic condition that was personal to Knight was arbitrary and there was clear evidence in the record to the contrary. Appellants claim that Knight's own testimony makes it clear that his injury did not result from a specific incident when he stated, "I really don't know exactly when it happened." Appellants cite *Hapney v. Rheem Manufacturing Company*, 342 Ark. 11, 26 S.W.3d 777 (2000), for the proposition that if the claimant cannot specify the time and cause of an injury, then the injury is not compensable. The supreme court stated:

> In her second point, Hapney submits that her neck injury is compensable because the injury was caused by a specific incident and was identifiable by time and place of occurrence pursuant to Ark. Code Ann. § 11-9-102(4)(A)(i). This argument is meritless and can easily be dismissed. Section 11-9-102(4)(A)(I) defines a compensable injury as one "caused by a specific incident and . . . identifiable by time and place of occurrence." Hapney's own deposition testimony reflected that she did not know how she was injured and that she did not recall anything specific happening, nor did Hapney tell her treating physician that her pain was associated with any particular, specific incident. Thus, her own words belie her argument that the injury was caused by a specific, identifiable incident.

*Id.* at 16, 26 S.W.3d at 780.

Appellants claim that as in *Hapney*, Knight cannot remember how he was injured, and Dr. Azar's medical report of August 14, 2001, indicates that the left-knee injury did not result from a "specific incident." Further, Knight had previously injured his knee, just as the employee in *Hapney* had a previous injury to her shoulder and neck. Here, Knight had surgery on his knee related to

a sports injury about twenty years ago. Also, Knight suffered a hyperextended left knee in May 2001. Therefore, appellants argue that *Hapney* should dictate the result. And, as in *Hapney*, this court should find that Knight's injury was not caused by a specific incident.

■ Knight submits that *Hapney, supra,* can be distinguished from the facts in the instant case. In this case, there is uncontradicted evidence that he had to climb stairs regularly. Specifically, he noticed a pain in his left knee around 11:00 p.m. which continued to get worse. Further, there is no dispute that when he started his shift on July 1, 2001, he did not have any problems with his knee. When he ended his shift that day, he was barely mobile. He emphasizes that injuries sustained due to an unexplained cause are different from injuries where the cause is idiopathic. *Swaim, supra.* We agree with Knight's argument and hold that this case is distinguishable from *Hapney.* In the instant case, Knight knew the day and time of when his knee began to hurt. He reported the pain to his supervisor and sought medical treatment the next day.

Appellants claim that *Crawford v. Single Source Transportation,* 87 Ark. App. 216, 189 S.W.3d 507 (2004), relied upon by the Commission and the appellee, can be distinguished. In *Crawford,* the claimant was injured when he stepped out of his truck, down two steep steps, and onto an oil field. *Id.* As his foot reached the ground, appellant's knee "gave" or buckled. *Id.* As a result, appellant fell to the ground and began to feel pain in his knee. *Id.* The court held that the work conditions contributed to the injury and found the injury to be compensable and not idiopathic. Appellants argue that in the instant case, there was no danger that existed to contribute to Knight's risk of injury. Appellants contend that occasionally utilizing stairs cannot be considered to increase the risk of injury as is contemplated by the law.

Appellants cite *ERC Contractor Yard & Sales v. Robertson,* 335 Ark. 63, 977 S.W.2d 212 (1998), where the supreme court held the risk of injury accompanied with working high atop the scaffolding increased the effects of the fall and thus made the injury compensable. Appellants claim that in the instant case, the stairs in Unit Six do not increase the risk of injury so as to make Knight's idiopathic injury compensable. Appellants claim that *Crawford* is also distinguishable in that the claimant's knee gave way when he put his foot on the ground. Here, Knight testified that he could not recall a specific incident such as a hyperextension, popping or

jamming of his knee. Therefore, appellants assert that the Commission incorrectly applied the case law.

Appellants claim that *Whitten v. Edward Trucking/Corporate Solutions*, 87 Ark. App. 112, 189 S.W.3d 82 (2004), is factually closer to the instant case than is *Crawford*. In *Whitten*, the employee walked up a set of stairs to his employer's office to turn in various trucking receipts. *Id.* at 115, 189 S.W.3d at 84. When he reached for the door, he felt pain in his back and fell to the ground. *Id.* The Commission found that appellant's fall was idiopathic and affirmed the ALJ's opinion, which stated that appellant had been diagnosed as suffering from three separate conditions, none of which were caused or aggravated by appellant's employment. *Id.* The employee had suffered a stroke in the past, a herniated disc at the L3-4 level he discovered more than a year prior to the fall, and a compressive lesion on his thoracic spinal chord. *Id.* This court affirmed the Commission, holding further that appellant's employment did not contribute to his accident because he was simply ascending stairs. *Id.* at 116, 189 S.W.3d at 84. We held that the fall was idiopathic, but not compensable because no evidence suggested that his employment contributed to his fall. *Id. Whitten* can be distinguished from the instant case in that an integral part of Knight's employment involved ascending and descending several sets of stairs. Further, Whitten suffered three separate conditions, any one of which could have caused his fall. Here, Knight had no conditions that could have led to his knee injury, other than the hyperextension of his left knee that he suffered at work in May 2001. That injury did not cause Knight to miss any work.

Knight claims that *Crawford* should control. Knight argues that at the time of his injury, he had been working twelve-hour shifts and was required to ascend and descend three flights of stairs throughout the day. He claims that the record is clear that his wife testified that when he left to go to work on July 1, 2001, he was not having any problems. However, when he arrived home that day, she noticed he was in acute distress.

■ The Commission found his and his wife's testimony credible regarding the circumstances and facts surrounding his injury. Dr. Hahn opined on October 16, 2002, that Knight's torn medial meniscus was related to his recent injury. Based on this evidence, Knight claims that the Commission's decision is supported by substantial evidence. We agree, and accordingly, we affirm the Commission's decision.

Affirmed, and the motion for rehearing is denied.

PITTMAN, C.J., HART, and GRIFFEN, JJ., agree.

ROBBINS and BIRD, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. I fully agree with the majority's analysis and discussion of this appeal, except, however, for its failure to address our recent decision in *Weaver v. Nabors Drilling USA*, 98 Ark. App. 161, 253 S.W.3d 30 (2007). While I disagreed with the majority's opinion when *Weaver* was decided, that decision was published and is now precedent. Although *Weaver* had not been decided on March 7, 2007, when we delivered our initial opinion in the instant case, a timely petition for rehearing was filed and I do not think that we now may, or should, ignore its existence.

Because I believe that *Weaver,* which decision is discussed in Judge Bird's dissent, requires a reversal of this appeal, I would grant rehearing.

SAM BIRD, Judge, dissenting. I would grant appellants' petition for rehearing and would reverse the Commission's finding that this claim is compensable. I believe that this court has erred as a matter of law and fact in upholding the Commission's finding that Knight sustained a compensable specific-incident injury rather than a noncompensable idiopathic injury.

A pre-hearing order reflects that Knight abandoned an alternate claim for a gradual-onset injury and contended only that he suffered a compensable injury to his left knee on July 1, 2004. Cedar Chemical responded that Knight did not sustain a specific trauma associated with his employment and that any injury he did sustain was not the major cause of his condition. The Commission found that the employment conditions of repeatedly walking up and down the stairs contributed to Knight's knee injury. Also noting a doctor's opinion that Knight's "torn medial meniscus resulted from his recent work injury" and finding Knight's testimony credible that his knee pain began while descending the stairs at around 11:00 a.m., the Commission found that the injury was not personal in nature and did not result from his degenerative disease, but was a specific-incident workplace injury arising out of and in the course of employment. This court has affirmed the Commission's opinion.

I believe that it is incongruous with our case law to classify Knight's onset of pain around 11:00 a.m. while walking down

stairs as a specific-incident injury. Arkansas Code Annotated § 11-9-102(4)(A)(i) (Repl. 2005) defines compensable injury as "an accidental injury causing internal or external physical harm . . . arising out of and in the course of employment . . . . An injury is 'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence." The phrase "arising out of the employment" refers to the origin or cause of the accident, while the phrase "in the course of the employment" refers to the time, place, and circumstances under which the injury occurred. *Swaim v. Wal-Mart Assocs., Inc.*, 91 Ark. App. 120, 208 S.W.3d 837 (2005).

In *Crawford v. Single Source Transportation*, 87 Ark. App. 216, 189 S.W.3d 507 (2004), the claimant stepped down from an elevated position in his truck, his knee buckled, he fell, and he experienced immediate pain and rapid swelling; his twisting/flexion knee injury was a specific-incident injury and, because employment conditions contributed to the injury, it could not be considered a noncompensable idiopathic injury. In *Swaim v. Wal-Mart, supra,* the claimant felt his foot pop while he was pulling a heavy pallet; the resulting fracture was a compensable specific-incident workplace injury rather than a noncompensable idiopathic injury. In *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998), where the supreme court affirmed the Commission's finding of a compensable idiopathic fall, there was evidence of a specific incident of trauma when the claimant fell from scaffolding while he was working on a building demolition.

Conversely, in *Hapney v. Rheem Manufacturing Co.*, 342 Ark. 11, 26 S.W.3d 777 (2000), no specific incident occurred where the claimant did not know how her neck was injured, did not recall anything specific happening, and did not tell her treating physician that her pain was associated with any particular, specific incident.[1] In *Weaver v. Nabors Drilling USA*, 98 Ark. App. 161, 253 S.W.3d 30 (2007), we upheld the Commission's finding of no specific incident although medical records stated that the claimant was at work when he first felt symptoms in his hands, he testified that his hands tingled and burned while he was "mixing mud" at work and lifting and carrying a mud sack, and no one denied that he identified the approximate time and date when he first noticed the symptoms at

---

[1] Hapney's cervical injury was compensable as a rapid repetitive motion injury under Arkansas Annotated Code section 11-9-102(4). *See id.* at 17, 26 S.W.3d at 780 (summarizing evidence that she bent her neck more than three times a minute during her ten-hour shift on the assembly line).

work. Noting the Commission's province to determine credibility, we wrote: "He could have easily injured himself the day before, weeks before, or during his 1995 fall. . . . He only proved that he had [a neck] injury and that he felt pain while at work — he failed to show that a specific incident occurred at work." *Id.* at 163, 253 S.W.3d at 32.

In my view, it is an error of law and fact to hold that Knight's experiencing knee pain around 11:00 a.m. while descending the stairway was a specific incident of trauma when there was no accidental event or apparent cause of injury occurring at the workplace to cause his pain. Testimony regarding the time, place, and circumstances of Knight's pain and swelling goes to "the course of employment" but does not satisfy the additional statutory requirement that an injury is "accidental" only if it is caused by a specific incident. The evidence simply does not identify a specific incident such as the ones in *Crawford v. Single Source Transportation, Swaim v. Wal-Mart,* or *ERC Contractor Yard & Sales v. Robertson.* Today our court holds that the onset of pain, rather than being the result of a specific incident, constitutes the specific incident itself. I believe this to be an error of law.

Furthermore, this court's review of evidence supporting the Commission's decision fails to acknowledge a factual error by the Commission. The medical record in this case, which is included in the addendum to Knight's brief, shows that Dr. Hahn opined "that Knight's torn medial meniscus was related to his recent injury." This court presents Dr. Hahn's words from the medical record as evidence that supports the Commission's decision. The Commission's reference to his opinion, however, includes a factual error:

> In a letter dated October 16, 2002, Dr. Hahn opined that the claimant's torn medial meniscus resulted from his *recent work injury.*
>
> Considering Dr. Hahn's expert opinion and in light of the claimant's credible account of the incident, the Full Commission finds that there is insufficient evidence to support a finding that the injury suffered by the claimant was personal in nature, as it was caused while descending the steps of his unit.

(Emphasis added.) Clearly, the word "work" does not appear in Dr. Hahn's actual statement that Knight's condition was "related to recent injury."

This court fails to acknowledge that the Commission cited a medical opinion that does not exist, a factual error that I believe

requires at least that this case be remanded for proper consideration of Dr. Hahn's opinion. The Commission and this court also fail to acknowledge Dr. Azar's notation of August 14, 2001, that Knight reported significant knee pain after climbing the stairs at work but had "no specific injury" and that his x-rays showed the presence of "tricompartmental degenerative changes." Thus, our opinion contains errors of fact.

I do not agree that Knight's injury differs significantly from that in *Whitten v. Edward Trucking*, 87 Ark. App. 112, 189 S.W.3d 82 (2004), the case in which we affirmed the Commission's decision that a truck driver suffered a noncompensable idiopathic fall. Whitten was walking up stairs to his employer's office, reached for the door, felt pain in his back, and fell; he neither tripped nor stumbled, nor was he carrying anything heavy. The Commission found that he was not engaged in a work-related activity at the time of the fall, that there was insufficient evidence of an employment risk as the cause of injury, and that the fall was idiopathic, stemming from one or more of three diagnosed medical conditions. Here, there was evidence that there were degenerative changes in Knight's knee, that Knight had previously undergone knee surgery, and that he had recently hyperextended his knee, any or all of which could have caused the symptom of pain that occurred while he was walking on the stairway.

Again, the evidence is insufficient to support a finding that Knight's injury was caused by a specific incident and that it arose out of his employment. I would reverse the finding of specific-incident injury and would find that an idiopathic injury occurred. In the absence of a specific injury, it was Knight's burden to prove that his idiopathic injury was compensable within our workers' compensation law. I would remand this case to the Commission with instructions that it consider all relevant evidence, including employment conditions and Knight's medical history, for determination of the compensability of the idiopathic injury.

For the reasons stated above, I dissent to the denial of the petition for rehearing.