2011 Ark. App. 202

**DELAPLAINE FARM CENTER and
Ag–Comp SIF, Appellants**

v.

**Ralph CRAFTON, Appellee.**

**No. CA 10–994.**

Court of Appeals of Arkansas.

March 9, 2011.

Guy Alton Wade, Little Rock, for appellants.

Kristofer E. Richardson, Jonesboro, for appellee.

RAYMOND R. ABRAMSON, Judge.

Delaplaine Farm Center (Delaplaine) appeals from an order of the Arkansas Workers' Compensation Commission awarding benefits to Ralph Crafton. The Commission found that Crafton had suffered a compensable, unexplained fall from the cab of an auger truck, resulting in broken ribs and a crushed vertebrae. Delaplaine disagrees with the Commission's conclusion, contending that Crafton's injuries were caused by an *idiopathic event*—acute renal failure—and, as such, his injuries were completely unrelated to his work and not compensable. Because there is substantial evidence to support the Commission's finding of a compensable injury, we affirm.

On June 26, 2009, Ralph Crafton was sitting in the cab of his auger truck awaiting the return of a loader truck so he could fill it with fertilizer. When he saw the loader truck return, he stood up to get out of the cab. Crafton's next recollection was of walking to the back of the truck, turning on the auger, and falling to his knees. He did not remember falling from the truck.

Crafton was airlifted to a hospital in Memphis. Upon examination, it was discovered that he had sustained fractures to his back and ribs. His lab results indicated that his creatinine levels were extremely high, indicating acute renal insufficiency. While his initial medical reports indicated a history of chronic renal disease, Crafton's primary care physician denied he suffered from any such condition. Later medical records indicated that, as his creatinine levels had eventually normalized, Crafton had actually suffered from acute, rather than chronic, renal insufficiency.

Crafton subsequently filed a claim for benefits, which Delaplaine controverted. A hearing was held before the administrative law judge (ALJ) on February 5, 2010.

At the hearing, Crafton testified that he was working for Delaplaine on June 26, 2009, when he apparently fell out of the cab of his truck. He claimed that he remembered standing up to get out of the truck, but had no recollection of actually getting out of the truck or of falling. The next thing he remembered was walking around the back of the truck. He did not realize he had fallen until he saw gravel marks on his hand when he turned the wheel to open the hoppers at the back of the truck. When he turned the wheel, he

fell to his knees because of the pain in his back.

Crafton admitted that he used alcohol on occasion, that he had been fired from previous jobs for drinking or being intoxicated, and that he would occasionally buy vodka on his way home from work; yet he denied any alcohol use on the date in question. He stated that the accident occurred on a Friday at the end of a long and tiring week and that he was generally working thirteen to fourteen hour days. He stated that the temperature on the day of the accident was in the nineties but that he was sitting in the shaded portion of the cab. Crafton stated that he was drinking water and Gatorade and denied feeling dehydrated. While he had previously been diagnosed with high blood pressure and was on medication for that condition, medical reports indicate that he was hypotensive after the accident. Crafton also admitted having dizzy spells on occasion, but denied ever passing out or losing time.

Teresa Ann Prince testified that she observed Crafton prior to his accident. She stated that he was a "really white, grayish, pallid color with bluish around his lips" and that he did not look like he felt well. She had previously worked in a hospital and as an EMT and was concerned for him. She told him to get some wet towels, but he assured her that he was okay. She testified that abnormally high creatinine levels can be caused by several things and that alcoholism could be a factor.

Dr. Greenman, an internal medicine specialist, reviewed Crafton's medical records. Dr. Greenman opined:

> There is little doubt that he had acute renal failure. The available record does not support a diagnosis of chronic renal failure. What is the question is the mechanism of his acute renal failure. Although renal consultant comments that the diagnosis is acute renal failure due to rhabdomyolysis, no record of myoglovin levels is present. However, the CPK was very high at 1032, supporting this diagnosis. Presuming normal pre-existing renal function, acute renal failure by any mechanism would require 3–4 days for the creatinine to climb from 1.1 up to 7.8. This simply did not happen within a few hours or even a whole day.
>
> If, in fact, there is documentation that the injury occurred immediately prior to admission to the hospital, then there had to have been an incident or circumstance which occurred in the time frame of 3–4 days before the report of injury which was actually the underlying cause of the renal failure.
>
> In my opinion, there must be a part of the story that has not been told. It is interesting that he has a prior history of alcohol abuse. It is not uncommon to see rhabdomyolysis with renal failure following alcohol induced unconsciousness.

Dr. Troxel, Crafton's primary care physician and a relative of Crafton, provided the following opinion on August 19, 2009:

> Ralph Crafton has been a patient of mine for over 10 years, and has been in my family for 38 years. He has contacted me because of concerns over a Workers' Compensation claim that an accident that occurred in June of 2009 was due to a pre-existing condition with his kidneys. His lab findings from September 3, 2009 showed a BUN of 15 and a serum creatinine of 1.1. In all my years of providing him care, prior to his injury he never had any evidence of renal disease. He does have a history of well controlled hypertension, which certainly can cause renal impairment over time, but his pressures were always noted acceptable and his compliance with medical treatment was always outstanding.

Certainly a fall with a resultant fracture in an otherwise healthy man is not related to any pre-existing condition.

Mr. Crafton suffered a fall on 6/26/09 which resulted in a T4 vertebral body fracture with associated rib and pedicle fractures. As a result of the fall and associated muscle injury, Mr. Crafton's creatinine rose to a level of 7.8 indicating a NEW CONDITION, Rhabdomyolysis, unrelated to any previous conditions. Mr. Crafton was monitored closely and hydrated, which resulted in the creatinine levels returning to normal and underwent spinal surgery on 7/6/09. He did well with surgery, and continues to do well after surgery with continued acceptable renal function.

None of the events from this injury are related to a hypothesized pre-existing renal condition. This injury resulted in muscle damage which resulted in renal impairment which was treated with hydration and time and resulted in return of normal renal function.

After reviewing additional information provided by Dr. Troxel, Dr. Greenman gave the following opinion:

I have reviewed the additional information provided by Dr. Troxel. There is no evidence to support anything other than acute renal insufficiency.

Rhabdomyolysis is an acute or subacute condition which can be caused by trauma but is usually related to prolonged pressure on muscle tissue such as occurs when unconscious or otherwise immobilized. Muscle enzyme elevation can be present within hours.

His blood pressure levels would not be relevant to rhabdomyolysis. Potassium elevation usually occurs later in the course of rhabdomyolysis and would be somewhat dependent on what the baseline was prior to injury.

As stated in my previous report, I think it is very clear that his problems preexisted the accident. For a creatinine level to climb from a normal 1.1 up to 7.8 takes at least 3–4 days to happen. I don't think that the evidence of peripheral vascular disease with aortic calcific and coronary calcification and microvascular changes have anything to do with the accident. They are incidental.

The ALJ found that Crafton's injuries were compensable. Specifically, the ALJ found that the fall sustained by Crafton was the product of dehydration brought on by Crafton's exposure to heat while discharging his employment duties and was not idiopathic and awarded benefits. Delaplaine timely appealed to the Commission.

After conducting a *de novo* review of the record, the Commission affirmed the award of the ALJ, but on different grounds. The Commission found that Crafton's injuries were due to an unexplained cause. The Commission stated that Crafton did not know why he fell from the cab of his truck, and that the medical evidence corroborated his testimony. The Commission further noted that none of the hospital records explain how or why Crafton fell and sustained his injuries. The Commission specifically found that the evidence did not support Delaplaine's assertions that Crafton blacked out and fell from his truck as a result of "renal failure." While the Commission recognized that Dr. Greenman opined that "[t]here is little doubt that [Crafton] had acute renal failure," they noted that Dr. Troxel had concluded that "[n]one of the events from this injury are related to a hypothesized pre-existing renal condition." The Commission then stated that "Dr. Troxel's opinion is entitled to more evidentiary weight than the opinion of Dr. Greenman."

Alternatively, the Commission found that, even if the fall was idiopathic in nature, the record shows that Crafton's work on the auger truck increased the dangerous effect of the accident. Finally, the Commission found that there was no evidence in the record to support Delaplaine's assertion that the accident was caused by alcohol consumption. It is from this order that Delaplaine appeals.

Delaplaine first argues that the Commission's determination that Crafton suffered a compensable injury is not supported by substantial evidence. More specifically, Delaplaine argues that the ALJ found and the Commission affirmed, without any medical evidence, that Crafton was dehydrated, resulting in a blackout that caused his fall.

■ This argument is misplaced because the Commission did not find that Crafton's fall was caused by dehydration, the ALJ did. The Commission, while affirming the decision of the ALJ, affirmed on different grounds. It is a well-established principle of Arkansas law that the findings of the ALJ, unless expressly adopted by the Commission, are irrelevant for purposes of appeal. *Matthews v. Jefferson Hosp. Ass'n,* 341 Ark. 5, 14 S.W.3d 482 (2000); *see Jones v. Tyson Foods, Inc.,* 26 Ark.App. 51, 759 S.W.2d 578 (1988). We are required by settled precedent to ignore the findings of the ALJ and restrict our review to the findings of the Commission. *See Matthews, supra; see also Scarbrough v. Cherokee Enters.,* 306 Ark. 641, 816 S.W.2d 876 (1991); *Stiger v. State Line Tire Serv.,* 72 Ark.App. 250, 35 S.W.3d 335 (2000). Thus, as our review is restricted to the findings of the Commission, Delaplaine's arguments as they relate to the ALJ's findings are irrelevant.

Delaplaine next argues that Crafton's injuries were the result of an idiopathic fall. In arguing that the fall was idiopathic, Delaplaine relies on the opinion of Dr. Greenman, an internal medicine specialist, that Crafton was suffering from renal failure that pre-existed the fall and that the renal failure caused Crafton to black out and fall from the truck. They assert the Commission incorrectly relied upon the opinion of Dr. Troxel that Crafton's renal failure was a new condition caused by the accident. Delaplaine notes that Dr. Troxel is not a specialist and had not treated Crafton since September 2008. As Delaplaine's fall was idiopathic in nature and not unexplained, they contend the Commission's decision was in error.

■ In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Death & Permanent Total Disability Fund v. Legacy Ins. Servs.,* 95 Ark.App. 189, 235 S.W.3d 544 (2006). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Foster v. Express Pers. Servs.,* 93 Ark. App. 496, 222 S.W.3d 218 (2006). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White v. Georgia–Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999). In making our review, we recognize that it is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Wal–Mart Stores, Inc. v. Stotts,* 74 Ark.App. 428, 58 S.W.3d 853 (2001). When the Commission weighs medical evidence and the evidence is conflicting, its resolution is a question of fact for the Commission. *Green Bay Packaging v. Bartlett,* 67 Ark.App. 332, 999 S.W.2d 695 (1999).

The Arkansas Supreme Court has distinguished injuries suffered from unexplained causes and injuries sustained from idiopathic causes:

> We first note that injuries sustained due to an unexplained cause are different from injuries where the cause is idiopathic. An idiopathic fall is one whose cause is personal in nature, or peculiar to the individual. 1 LARSON, WORKERS' COMPENSATION LAW, §§ 12.11 (1998); *See also Kuhn v. Majestic Hotel,* 324 Ark. 21, 918 S.W.2d 158 (1996); *Little Rock Convention & Visitors Bur. v. Pack,* 60 Ark.App. 82, 959 S.W.2d 415 (1997); *Moore v. Darling Store Fixtures,* 22 Ark.App. 21, 732 S.W.2d 496 (1987). Because an idiopathic fall is not related to employment, it is generally not compensable unless conditions related to employment contribute to the risk by placing the employee in a position, which increases the dangerous effect of the fall. LARSON, *supra.*

*Whitten v. Edward Trucking/Corporate Solutions,* 87 Ark.App. 112, at 116–17, 189 S.W.3d 82 (2004) (quoting *ERC Contractor Yard & Sales v. Robertson,* 335 Ark. 63, 71, 977 S.W.2d 212, 216 (1998)).

A workers' compensation claimant bears the burden of proving that his injury was the result of an accident that arose in the course of his employment and that it grew out of, or resulted from the employment. *Whitten, supra.* "Arising out of the employment" refers to the origin or cause of the accident, while "in the course of the employment" refers to the time, place and circumstances under which the injury occurred. *Whitten,* 87 Ark.App. at 117, 189 S.W.3d at 85. When a truly unexplained fall occurs while the employee is on the job and performing the duties of his employment, the injury resulting therefrom is compensable. *Id.*

The Commission found that Crafton's fall was unexplained and, therefore, compensable. Crafton testified that he did not know why he fell from the cab of his work truck. None of his treating physicians opined as to what caused him to lose consciousness and fall. While Dr. Greenman did opine that Crafton was suffering from renal failure at the time of the fall, Dr. Greenman never stated that the renal failure caused Crafton to lose consciousness and fall. In any event, Dr. Greenman's conclusions were directly contradicted by Dr. Troxel, who stated that Crafton's renal issues were not pre-existing and were caused by the fall. The Commission expressly stated that it gave more weight and credibility to Dr. Troxel's opinion over Dr. Greenman's. The Commission is the ultimate arbiter of weight and credibility; it has the authority to accept or reject medical opinions, and its resolution of conflicting medical evidence has the force and effect of a jury verdict. *Amaya v. Newberry's 3N Mill,* 102 Ark. App. 119, 282 S.W.3d 269 (2008); *Wal-Mart Stores, Inc. v. Sands,* 80 Ark.App. 51, 91 S.W.3d 93 (2002).

Thus, accepting Dr. Troxel's opinion as true—that Crafton's renal insufficiency was caused by the fall, not the cause of the fall—the exact reason for the fall remains unexplained. Accordingly, the Commission correctly determined that Crafton's injuries were compensable.

We also note that, even were we to determine that the fall was idiopathic rather than unexplained, Delaplaine still cannot prevail. The Commission specifically found that, even if Crafton's accident and injuries resulted from an idiopathic cause, the record showed that Crafton's work on the auger truck increased the dangerous effect of the accident. As Delaplaine has

not challenged this finding, its claim must fail.

Affirmed.

GLOVER and HOOFMAN, JJ., agree.