2011 Ark. App. 555

**MEDIC ONE, LLC, and Commerce & Industry Ins. Co., Appellants**

v.

**James COLBERT, Appellee.**

**No. CA 11–318.**

Court of Appeals of Arkansas.

Sept. 21, 2011.

Jarrod S. Parrish, Little Rock, for Appellants.

Phillip John Wells, Jonesboro, for Appellee.

CLIFF HOOFMAN, Judge.

Appellant Medic One appeals from the Workers' Compensation Commission's de-

cision affirming the Administrative Law Judge's finding that Medic One is responsible for all reasonably necessary medical treatment subsequent to December 9, 2009. Appellants argue on appeal that the Commission's decision was based on an error of fact or evidence not in the record. We affirm.

Appellee James Colbert worked as a paramedic for appellant Medic One. On March 15, 2009, Colbert fell and injured his left shoulder while caring for a patient in the back of a Medic One ambulance. Emergency room doctors performed x-rays and provided Colbert a sling. Colbert followed up with the physician selected by appellants and was ultimately referred to Dr. Spencer Guinn, an orthopedic specialist. Dr. Guinn evaluated Colbert and ordered an MRI. Based on the MRI results, Dr. Guinn recommended and performed rotator-cuff repair on June 11, 2009. Post surgery, Dr. Guinn prescribed physical therapy, and Colbert began attending therapy sessions with physical therapist Keith Thompson at NEA Orthopaedic and Sports. Colbert's condition improved with physical therapy. By mid-September, Dr. Guinn and the physical therapist were both noting excellent progress with decreased pain and improved range of motion. On October 20, 2009, the therapist noted that Colbert reported that his pain had increased over the last several weeks after being off of pain medication. Dr. Guinn saw Colbert on October 21, 2009, and again on November 23, 2009, when he recommended another MRI. The MRI performed on December 3, 2009, revealed a full thickness tear of the anterior supraspinatus tendon with retraction. Dr. Guinn recommended surgery to repair the new tear in Colbert's shoulder. Appellants denied Colbert's request for surgery and contended that the new tear was the result of an independent intervening cause, not the admittedly compensable March 15, 2009 injury.

A hearing was held before ALJ Andrew Blood on June 4, 2010. Colbert was the only witness to testify at the hearing. Medical records, the deposition of Dr. Guinn, and the deposition of nurse case manager Rebecca Poston were introduced into evidence at the hearing.

Colbert testified that after his June surgery, he progressed with range of motion and function of his shoulder, and his pain decreased but never subsided. Dr. Guinn placed him on a one-arm restriction for work. In October, Colbert took a two-day course called Advanced Cardiovascular Life Support (ACLS). He testified that he told the instructor, Shawn Perrin, that he could only perform CPR one-handed and that he did in fact perform it with one arm. He also used a laryngoscope with his left hand while performing a procedure, but he testified that this did not cause any type of problems with his shoulder. Colbert testified that he did not experience any additional pain or discomfort in his left shoulder at any point during the ACLS class. Colbert testified that he never told his nurse case manager, Poston, that he had to stop doing CPR and intubation because of the pain. He claims he brought up the ACLS class to her to tell her how his shoulder was doing, not to tell her that he re-injured his shoulder. He testified that he told Poston he did CPR with only one arm the first time he talked with her about the class.

Colbert testified that, although in his deposition he said that he had not been hunting from the date of his injury to the date of the deposition, he later provided information to modify that answer. He claimed he thought he was telling the truth at the time of the deposition. Colbert testified that he did go deer hunting and used a muzzleloader to kill two deer on

October 17, 2009. He testified that he had hunted approximately four times since early October 2009. He claimed that nothing during his hunts caused any pain or discomfort in his left shoulder. Colbert hunted from a tree stand ten feet off the ground and used his left arm to climb the ladder up to the stand. He did not carry anything up the ladder with him, but he instead pulled his gun and backpack up with a rope. He pulled the rope hand over hand but did take the weight of it on his right arm. He estimated that his backpack weighed about ten pounds. Colbert testified that he never picked up the weight of a deer to load it onto a truck, rack, trailer, or anything. He claimed that he dragged the deer behind a four-wheeler from the deer stand to the deer camp.

Colbert also testified that he had not had any traumatic incident that caused him to sustain another injury to his left shoulder since the first surgery. He said that he told Dr. Guinn that physical therapy was causing problems with his shoulder. Colbert testified that in physical therapy he engaged in "work-hardening," which consisted of climbing ladders, lifting weights, lifting heavy boxes from the floor to a standing position, and overall strength training. He claimed that this hurt his shoulder and that every time he went to the physical therapist or the doctor he reported that he still had pain.

Dr. Guinn's deposition was taken April 21, 2010. Dr. Guinn testified that at each of Colbert's follow-up visits he continued to have some pain, and although it improved, it was persistent. He testified that the tear observed in the December 2009 MRI was in front of the tear previously repaired. Dr. Guinn testified that it is his opinion that the major cause of the second tear arises from the initial injury of March 15, 2009. He testified that when the rotator cuff is damaged, patients can still have

fibers intact that have not failed yet. In the first surgery, he repaired the portion that was obviously damaged and during physical therapy, the area just next to it then failed as a result of the original injury he had. He stated that there could have been damage to a larger area of the rotator cuff and just one portion of it had failed at the time of surgery. Dr. Guinn testified that it is his opinion that more likely than not the physical therapy actually precipitated this eventual tear.

Dr. Guinn also testified that in his opinion doing one-handed CPR and using his left arm while using a laryngoscope would not have caused Colbert's rotator-cuff tear. Dr. Guinn testified that although, technically, doing CPR with both hands would be in violation of the one-arm restriction, he would have approved it if asked because the way CPR is performed does not concern him. Dr. Guinn stated that Colbert was doing harder exercises than that in physical therapy and that doing chest compressions probably does not even activate the rotator cuff. He also testified that he would have approved the use of the laryngoscope and that its use could not have caused the new problem in Colbert's shoulder.

When asked about how climbing a ladder affects the rotator cuff, Dr. Guinn testified that it really depends on whether a person is having to pull himself up or if he is using his legs. Dr. Guinn stated that he would wait a minimum of three months before telling someone that he thinks it is okay to pull overhead. Colbert's deer hunting trips occurred four months after his surgery. Dr. Guinn stated that the act of cleaning a deer is not particularly stressful to the shoulders. He concluded that CPR, intubation, operating a muzzloader, and cleaning a deer are all low-risk activities, but there is more variability in climbing a ladder.

Dr. Guinn testified that his concern with Colbert was that when he reached the point of doing more aggressive strengthening of his shoulder, his pain persisted and then began to worsen. He stated that four or five months out from surgery, therapy should not still be as painful as it was for Colbert. Dr. Guinn stated that a three on the pain scale is still enough to disrupt and that "nobody wants to walk around with a three." He stated that the level of pain can fluctuate and that rotator-cuff pain tends to be worsened with activities. He testified that with the type of tear revealed in the December 2009 MRI, patients can have full range of motion.

Dr. Guinn stated that without performing surgery it is hard to tell if it was a progressive tear, and sometimes even when looking at it, it is not possible to tell if "the whole thing failed at once or if it peeled off." He stated that if it was a "peeling-type tear," it would come on over time, as opposed to when a person lifts something heavy, feels a pop, and the whole thing is ripped off at once.

Rebecca Poston's deposition was taken on March 25, 2010. She testified that in a phone conversation with Colbert, she asked him if he re-injured his arm. She claimed Colbert stated that he did not think so, that he did not remember specifically doing anything to his arm, and that if it had been reinjured it would have to have happened in physical therapy. She claimed that Colbert brought up the fact that he went to an ACLS class and had attempted to do CPR and intubation but could not because of the pain. She stated that he did not say that he used only one arm. Poston testified that it was not until January 2010, after three to five more conversations with Colbert, that he first claimed he had only used one arm to do CPR.

The ALJ issued an opinion on August 30, 2010, wherein he awarded Colbert additional medical treatment upon finding that the need for further surgery to the left shoulder rotator cuff is a continuum of the March 15, 2009 compensable injury. Appellants appealed to the full Commission, which entered an opinion on February 16, 2011, affirming and adopting the ALJ's opinion. Appellants then filed a timely notice of appeal with this court.

■■■ In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Delaplaine Farm Ctr. v. Crafton*, 2011 Ark. App. 202, 382 S.W.3d 689. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* In making our review, we recognize that it is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Id.* When the Commission weighs medical evidence and the evidence is conflicting, its resolution is a question of fact for the Commission. *Id.*

■■■ Appellants argue that the Commission based its decision on an error of fact. They argue that the finding that Colbert suffered a rotator-cuff tear during work-hardening at physical therapy is error because an examination of the medical records reveals that Colbert had not undergone any sessions of work-hardening between his last positive clinical examination and his turn for the worse. Appellants argue that the Commission's decision is clearly based on facts not in evidence or an erroneous interpretation of

the evidence presented. They argue that we are required to reverse and remand when the Commission makes a mistake of fact in its opinion that involves relevant medical evidence that the Commission expressly relied on in reaching its decision. *Holloway v. Ray White Lumber Co.*, 337 Ark. 524, 990 S.W.2d 526 (1999).

Appellants cite medical records showing that after his surgery, Colbert was progressing well with physical therapy and experiencing decreased levels of pain. Appellants argue that on October 14, 2009, just six days before presenting to the doctor with increased pain, Colbert was noted to have 100% passive range of motion in his shoulder with 4/5 strength and a pain rating of zero to two on a ten-point scale. Appellants argue that Colbert's positive reports abruptly stopped after a weekend of deer hunting and after participating in a paramedic course in contravention of doctor's orders. Appellants argue that on October 20, 2009, just three days after an extended deer hunt, Colbert presented in his physical therapist's office complaining of increasing pain and symptoms in his shoulder. Appellants claim that the visits on October 20 and 21 were the first indication of any worsening of Colbert's symptoms postoperatively.

Appellants argue that it has to be more than a mere coincidence that the hunting trip Colbert did not want to talk about at his deposition took place less than seventy-two hours before he presented at Dr. Guinn's office with the problems that eventually showed up in his December 2009 MRI. Appellants presented records from the Arkansas Game and Fish Commission showing that Colbert harvested two deer on October 17, 2009, and appellants express disbelief that Colbert could have forgotten about going hunting when asked in his deposition. Appellants point out how Colbert used his left arm in climbing the ladder to the tree stand, pulling his backpack and rifle up, loading and firing the rifle, and removing deer from the woods. Appellants argue that the most plausible explanation for the new rotator-cuff tear is the activities Colbert engaged in immediately prior to experiencing new pain and symptoms, not work-hardening sessions that had not even taken place yet.

Appellants also cite the deposition testimony of Rebecca Poston, who testified that Colbert indicated that the ACLS class he attended could have been the cause of the new rotator-cuff tear. Appellants argue that, despite having three to five different conversations with Poston, Colbert did not tell her anything about doing CPR with one arm until his claim for benefits had been denied. Appellants argue that despite Colbert's contention that everyone saw him perform CPR with one arm, he did not have any witnesses to corroborate his claim. Appellants also point out that the course instructor, Shawn Perrin, stated that he did not remember Colbert performing CPR with one arm.

Appellants argue that Colbert "clearly either tore his rotator cuff doing the ACLS activities that caused his pain to spike, or he injured himself while hunting and doing a variety of tasks with his left arm." Appellants argue that the problem with the Commission's decision that the injury occurred doing work-hardening is that the record does not contain evidence of any specific event that would have caused the type of tear revealed in the December 2009 MRI. Appellants also claim that there are no therapy notes nor is there any evidence of work-hardening taking place between Colbert's positive examination and evaluation on October 14, 2009, and his turn for the worse on October 20 and 21.

Colbert notes that when there are contradictions in the evidence, it is within the

Commission's province to reconcile conflicting evidence and to determine the true facts. Colbert argues that the Commission did not ignore the evidence about the ACLS class and deer hunting because this evidence was discussed in the ALJ's decision.

There is substantial evidence to support the Commission's conclusion. Appellants' version of events is that Colbert experienced a steady decrease in pain until some specific event caused the tear in his rotator cuff at some point between October 14 and October 20, 2009. They note that the physical therapy report from October 14 shows that Colbert's pain level was between zero and two on a ten-point scale, and the therapy report from October 20 states that Colbert reported that his pain had increased.

While Colbert was experiencing decreased pain levels as he progressed with his therapy after surgery, an examination of the brief therapy notes for each visit shows that his pain level began to increase somewhat before October 20. Although the progress notes written by physical therapist Keith Thompson are nearly completely illegible, the pain rating on each date can be deciphered. In September, the pain rating Colbert reported was one to two out of ten on average. Beginning on October 2, however, the pain was reported as a two or three. Dr. Guinn testified that pain fluctuates and that he looks for more of an average of whether a patient's pain is increasing or decreasing over a week or month, not what the pain level is on a particular day. Although the progress note for October 14 states that pain was zero to two, for both October 7 and 15, pain was rated at a three out of ten. Although appellants attempted to portray a drastic change from zero to two pain on October 14 to pain reports at five on October 21, the change was not so abrupt in reality.

Furthermore, appellants' timeline of events does not line up with their argument that Colbert tore his rotator cuff when participating in the ACLS class. This class was held on October 12 and 13, before Colbert's good report on October 14. Also, although the course instructor, Perrin, could not remember Colbert doing CPR with one arm, he also noted that Colbert may have simulated CPR with one hand and that it would have been allowed.

While appellants complain that Dr. Guinn did not know all of the details of Colbert's hunting trip, they disregard Dr. Guinn's opinion on whether these activities could have caused the tear. The only activity Colbert performed that Dr. Guinn stated could have presented a problem was climbing a ladder. However, Dr. Guinn stated that he would wait three months after surgery before allowing a patient to pull overhead, and Colbert's hunting trip was more than four months after his surgery. Furthermore, Colbert testified that he did not experience pain in his shoulder while hunting.

Appellants also seem to disregard Dr. Guinn's testimony that the tear likely occurred over time and was not due to a specific event. Several factors support this version of events. The October 20 therapy note states that Colbert reports that pain had increased *over the last several weeks since being off pain medication.* The 100% range of motion appellants point to in the October 14 report does not indicate that there was no tear at that time because Dr. Guinn testified that patients with a torn rotator cuff can have 100% range of motion. Dr. Guinn testified that his notes for the October 21 visit stated that Colbert was to continue work-hardening at physical therapy. Dr. Guinn testified that work-hardening was already tak-

ing place as prescribed in the therapy protocol. The therapist's progress summary for September 17 states that Colbert is able to lift boxes from ten to twenty-five pounds below shoulder level without pain and that he experiences mild pain when lifting ten pounds above the shoulder. By October 20, Colbert had progressed to lifting forty pounds from the floor to his waist and twenty-five pounds from the floor to above his shoulders. Colbert continued with physical therapy after that visit, and Dr. Guinn testified that the November 23 office visit was the first time he became very concerned that Colbert was still having such pain.

When asked why the ACLS class and deer-hunting trips were not more plausible explanations for the tear, Dr. Guinn stated as follows:

I think the ones you brought up, I think those were low stress to the rotator cuff particularly, at the point in time postoperatively when they happened. The therapy, on the other hand, was started immediately after surgery and was three times a week in most cases all the way through. We were putting more specific loads on the rotator cuff in the positions that concern me which is in front of the body and overhead. That is what concerns me more than those other ones due to their biomechanics and due to the length of time out from surgery that they occurred.

When asked how he could say that physical therapy caused the tear without any evidence of anything happening in physical therapy, Dr. Guinn responded as follows:

It's my opinion that due to the activities he was being asked to perform in therapy and based off of his original findings that this is still a continuum of his original injury where he initially had failure of part of the rotator cuff. We fixed it and then during the course of the next five to six months during therapy that the part of the rotator cuff in front of it or anterior to it then failed.

When asked when this failure took place, Dr. Guinn stated that it occurred over that time period. Lastly, when Dr. Guinn was asked how he could state with any reasonable degree of medical certainty that the rotator-cuff tear happened in physical therapy, Dr. Guinn stated as follows:

Well, it's just, based off of my knowledge of what he's doing in therapy at this point. We are adding progressively more weight. We are beginning what's called work hardening which is where we are trying to simulate activities that he's going to have to perform such as overhead pressing, lifting away from his body. You know, these are higher stress activities and it's once we began doing those that he began having his increases in pain.

As the ALJ noted, the determination of the existence of an independent intervening cause is a question of fact for the Commission to determine. *Oak Grove Lumber Co. v. Highfill,* 62 Ark.App. 42, 968 S.W.2d 637 (1998). Furthermore, the Commission has a duty to use its experience and expertise in translating the testimony of medical experts into findings of fact. *Id.* As the ALJ found, only physical therapy has been attributed as the source of the increased pain level and subsequent diagnosis of a torn rotator cuff. The ALJ and Commission's conclusion that the tear grew out of the original injury is supported by substantial evidence.

Affirmed.

VAUGHT, C.J., and BROWN, J., agree.